The decree of his Honor is as follows-:—
A bill has been filed for the purpose of injoining, as it is said, the defendant, John Cogburn, from acting as the committee of the complainant Milley Medlock, who was found to be of unsound mind and incapable of managing her affairs, by an inquisition taken under a writ in the nature of a writ de lunático inquirendo.
The proceeding is altogether irregular. The court does not injoin its own proceedings; though it may rescind or suspend its own order, upon proper cause shewn.
After finding a person of unsound mind by an inquisition, if there be any irregularity in the finding, or if it* appear on the face of it to be insufficient, it may be quashed and a new commission awarded. Ex parte Barnsley, 3 Atk. 168, 184 ; ex parte Cranmer, 12 Ves. 454.
It is also said, that after inquisition, the party may be inspected and examined by the Chancellor, and if he is clearly satisfied of the soundness of mind, -the proceedings may be discharged. Ex parte Roberts, 3 Atk. 6.
If the party, or any one having an interest, is dissatisfied •with the finding of the jury on the evidence, the course is to traverse it in the court of law. The right to traverse is referred by the English cases to the statute 2d and 3d Edw. 6, c. 8, s. 6, providing that “if. any person be or shall be untruly found- *478 en lunatic, &c., be it enacted, that every person or persons grieved or to be grieved by any such office or inquisition, shall or may have his or their traverse to the same, immediately, or after, at his or their pleasure, and. proceed to trial therein, and have like remedy and advantage as in other cases of traverse upon untrue inquisitions or offices founden.” (a)
That statute is not expressly enumerated among those made of force by our Act of 1712. I think, however, that it comes very clearly within the general description of all such statutes “as declare the rights and liberties of the subject, and enact the better securing the same.”(b) All the cases on the subject regard the proceedings in lunacy as affecting in the highest degree the rights and liberties of the citizen, — as they manifestly do. The statute has accordingly been always followed in this State. It is in conformity, too, with the principles of the common law. It appears from the terms of the statute, and as explained by Lord Hardwick in ex parte Southcot, 2 Ves. Sr. 402, that the inquisition was regarded as an ex parte proceeding on behalf of the crown, like the inquisition of escheat, (fee. But by the common law, no one is concluded by proceedings to which he was not a party.
No irregularity is alleged to exist on the face of the inquisition, nor is it before me, nor has the party offered herself to my inspection and examination.
The grounds for relief alleged by the bill are, first, that the complainant, Milley Medlock, had not notice of the application to the court, and of the inquisition by which she was found of unsound mind ; and secondly, that she is not in fact of unsound mind; in support of which allegation various affidavits are produced.
As to the first, I think from the authorities that notice was not necessary. In ex parte Southcot it was held that the presence of the party was not necessary. In that case he was in a foreign country, and plainly it was not intended that notice should be given him. This maybe infered from ex party Hall, 7 Ves. 261, in which, under the circumstances of the case, Lord Eldon directed that the party should have notice, and quashed the inquisition for the want of it. In the King vs. Daly, 1 *479 Yes. Sr. 269, which was a case of inquisition of escheat, it was said, in all cases of inquest, not to be the general rule that notice should be given ; yet when the party was apprised of the proceedings and desired notice, he was entitled to it. It was his privilege to be present, if he thought proper. So it is said the jury may require the presence of the party, if they think proper, but they are not bound to do so. This is on the ground to which I have before referred, that the inquest is regarded as an ex parte proceeding. No application was made, that the party in this case should have notice, and therefore no order to that effect was made.
With respect to the allegation that the complainant Milley Medlock is not in fact of unsound mind, it is plain that after the inquisition the bill cannot be entertained with a view to the court’s deciding that question upon evidence. That can only be done by a traverse in the court of law. But though as a bill, it must, I apprehend, be dismissed, yet I may properly regard it as an application for leave to traverse. This is commonly done by the leave of the court, and the application has been made by petition. Ex parte Wragg, 5 Ves. 450 : ex parte Hall, 7 Ves. 261. As said by the Chancellor in the last case, the traverse under the statute is matter of right at law, and perhaps no order of this court would be necessary for that purpose. The necessity for an application to the court arises out of the circumstance mentioned by Lord Hardwick in ex parte Roberts, 3 Atk. 7, that without the leave of the court, the custody could not be suspended. The common course, as indicated in ex parte Wragg, is to suspend the custody when leave is given to traverse ; “for supposing upon the traverse she is found compos mentis, I cannot take her property.” Under peculiar circumstances, it seems to be within the discretion of the court not to suspend the custody. In the matter of Ludlam, (reported 1 Collinson on Idiots, 174) after the inquisition and appointment of a committee, Lord Erskine, on the application of the lunatic, granted an order restraining the committee from interfering with his person until the trial of the traverse. On the representation of his physician, that he was in such a state of lunacy as to render it necessary that he should be strictly guarded, Lord Eldon discharged the order. I see nothing in this case to require a departure from the usual course, and think the custody must be suspended until the trial.
John M. Kinard, to whom the complainant Milley Medlock *480 has conveyed her estate, is a proper party to this application. Not only the lunatic himself, but his alienee, or any person who has contracted to purchase from or sell to him, may traverse, or join the lunatic in traversing, and will be bound by the verdict. Ex parte Roberts, 3 Atk. 308 ; ex parte Hall; Niel vs. Morley, 9 Ves. 478.
It may be proper to observe that although the alleged lunatic and her alienee suggest the proceedings on the inquisition and tender the traverse, they are regarded as defendants, and the case must be made out on the part of the State as plaintiff. Rex vs. Roberts, 2 Stra. 1208.
It is ordered that Milley Medlock, and her alienee, John M. Kinard, have leave to traverse the inquisition of the jury by which the said Milley Medlock was found to be of unsound mind, to the next sitting of the Court of General Sessions for Edgeñeld District; and that John Cogburn, who has been appointed the committee of the said Milley Medlock, be restrained from interfering with her person or estate until the trial of the said traverse.

 Vide Shelf, on Lunatics, 113, 498, 2 Law Lib. 72, 316.

 2 Stat. 413.